UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

CHARLES BRIDGES,                          :
                                          :
                Plaintiff,                :
            v.                            :      No. 5:12-cv-02316
                                          :
CAROLYN W. COLVIN,                        :
Acting Commissioner of Social Security    :
Administration, et al.,                   :
                                          :
                Defendants.               :
_____

**MEMORANDUM OPINION**

**Plaintiff's Motion for Reconsideration and/or Reargument, ECF No. 63 – Denied**
**Defendants' Motion to Dismiss Count II, ECF No. 65 – Granted**
**Plaintiff's Motion for Leave to File Third Amended Complaint, ECF No. 67 - Denied**

**Joseph F. Leeson, Jr.**                          **September 30, 2015**
**United States District Judge**

I.      **Introduction**

        Presently before the Court are the following three motions: (i) Plaintiff's Motion for

Reconsideration and/or Reargument of the Order of the Court dated March 28, 2014, in which

the Court granted, in part, the motion of Defendants to dismiss Plaintiff's Amended Complaint,

(ii) Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint, the sole claim

presently remaining in Plaintiff's Amended Complaint following the Court's aforementioned

March 28, 2014 Order, and (iii) Plaintiff's Motion for Leave to File a Third[1] Amended

Complaint. For the following reasons, the Court denies Plaintiff's Motion for Reconsideration,

_____

[1]        Contrary to the title of this Motion, Plaintiff's complaint has only been amended once.

1

grants Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint, and denies Plaintiff's Motion for Leave to amend his complaint.

## II.   Factual Background[2]

Plaintiff is an administrative law judge ("ALJ") employed by the United States Social Security Administration and was formerly the Hearing Office Chief Administrative Law Judge ("HOCALJ") at the Administration's Harrisburg, Pennsylvania office. Am. Compl. ¶ 20, ECF No. 30. Applicants for Social Security benefits are entitled to appeal unfavorable decisions on their claims, and Social Security Administration ALJs, such as Plaintiff, preside over these appeals. Id. ¶¶ 29, 42. The HOCALJ of a regional Social Security Administration office acts in a managerial capacity for the office, id. ¶ 32, with "[o]ne of the essential duties of the HOCALJ" being "to assign and reassign appeals cases to subordinate ALJs within the hearing office," id. ¶ 43.

Plaintiff alleges that the Social Security Administration and certain individuals employed by the Administration discriminated against him on the basis of his status as an African-American in violation of Title VII, violated his due process rights under the Fifth Amendment, and engaged in tortious conduct under Pennsylvania law. Plaintiff's claims arise out of a decision by Defendant Jasper Bede, the Regional Chief ALJ and Plaintiff's immediate supervisor during Plaintiff's tenure as HOCALJ, to remove Plaintiff from his position as HOCALJ of the Harrisburg office. See id. ¶¶ 22-23, 74-75. Plaintiff claims that Defendant Bede conspired with Defendants Janet Landesburg and Reana Sweeney, two ALJs who were subordinate to Plaintiff

---

[2]     The following is a brief overview of the circumstances that gave rise to this action. A comprehensive review of the factual background of this action can be found in a previous opinion of the Court granting in part Defendants' prior motion to dismiss Plaintiff's Amended Complaint. See Bridges v. Astrue, No. 12-cv-02316, 2014 WL 1281158, at *5-9 (E.D. Pa. Mar. 28, 2014).

in the Harrisburg office, to remove Plaintiff from his position on the basis of "racial animus, jealousy and malice against Plaintiff." Id. ¶¶ 24-25, 44.

According to Plaintiff, Defendant Bede's explanation for removing Plaintiff from his position was that Plaintiff had improperly reassigned a pending appeal from Defendant Landesberg to another ALJ—a decision that led Defendant Landesberg to file a grievance against Plaintiff. Id. at ¶¶ 65-75. Plaintiff, however, claims that his decision to reassign the appeal from Defendant Landesberg comported with the Social Security Administration's case management procedures, which suggests that Defendant Bede's explanation for removing Plaintiff from his HOCALJ role was merely a pretext. Id. Plaintiff contends that, in fact, Defendants Landesburg and Sweeney, who are white, had urged Defendant Bede to remove Plaintiff from his position, and Defendant Bede "acceded to the demands of [the] two white females." Id. at 64, 78.

Plaintiff's Amended Complaint contains the following eight claims: (1) violations of Title VII's prohibition on discrimination on the basis of race in employment and Title VII's prohibition on the creation of a hostile work environment, which Plaintiff asserted against the Social Security Administration and the individual Defendants, Am. Compl. ¶¶ 4-8, 62-78; (2) violation of Plaintiff's procedural due process rights under the Fifth Amendment as a result of his removal from his position as HOCALJ without an opportunity for a hearing, which Plaintiff asserts against the Social Security Administration and the individual Defendants, Am. Compl. ¶¶ 79-82; (3) violation of Title VII's anti-retaliation provision, arising out of allegations that Defendant Bede failed to provide Plaintiff with a meaningful opportunity to bid on open HOCALJ positions after Plaintiff was removed from his position as HOCALJ of the Harrisburg office, Am. Compl. ¶¶ 83-85; (4) defamation under Pennsylvania law, arising out of allegations

that the individual Defendants made "statements and innuendo that Plaintiff does not apply the Social Security laws and regulations properly, or is, somehow unethical, biased or dishonest in his application of the Social Security law," Am. Compl. ¶¶ 86-92; (5) tortious interference with contractual relations under Pennsylvania law, arising out of allegations that the individual Defendants intentionally interfered with the collective bargaining agreement that governs the relationship between HOCALJs and subordinate ALJs, Am. Compl. ¶¶ 93-94; (6) intentional infliction of emotional distress under Pennsylvania law, which Plaintiff asserted against the individual Defendants, Am. Compl. ¶¶ 95-97; (7) "wrongful discharge in violation of public policy" under Pennsylvania law, which Plaintiff asserted against the individual Defendants, Am. Compl. ¶¶ 98-99; and (8) intrusion upon seclusion under Pennsylvania law, arising out of allegations that the individual Defendants improperly disclosed the terms of a prior settlement Plaintiff reached with the Equal Employment Opportunity Commission ("EEOC"), Am. Compl. ¶¶ 100-01.

## III.    Procedural History

On February 21, 2014, Plaintiff moved for a temporary restraining order and preliminary injunctive relief based on allegations that Defendant Bede had suspended Plaintiff from his duties as an ALJ for a ten-day period following a "focused review" of ninety cases that Plaintiff had adjudicated. See Mem. Supp. Pl.'s Mot. TRO and Prelim. Inj. 7-8, ECF No. 44-3. Plaintiff claimed that he was to undergo training during this period of suspension. Id. After Plaintiff and his attorney failed to appear at a hearing on Plaintiff's Motion, the Court denied Plaintiff's Motion. See Order, Feb. 24, 2014, ECF No. 49. Plaintiff then appealed the denial of his Motion to the United States Court of Appeals for the Third Circuit. See Notice of Appeal, Mar. 6, 2014, ECF No. 57. The Third Circuit dismissed the appeal as moot because Plaintiff had completed the

training and been reinstated to his position by the time the court considered his appeal.[3] See Bridges v. Comm'r of Soc. Sec., 607 F. App'x 168, 170-71 (3d Cir. 2015).[4]

On March 28, 2014, this Court granted, in part, the motion of Defendants to dismiss Plaintiff's Amended Complaint, dismissing seven of Plaintiff's eight claims. First, the Court dismissed each of Plaintiff's claims of discrimination that he brought against the individual Defendants, which had alleged violations of his constitutional rights and his rights under Title VII. The Court explained that Title VII provides the exclusive remedy for a federal employee to seek redress for racially motivated employment discrimination, and a Title VII claim can only be asserted against the head of a federal agency, not individual federal employees. See Bridges v. Astrue, No. 12-cv-02316, 2014 WL 1281158, at *12 (E.D. Pa. Mar. 28, 2014). Second, the Court dismissed each of Plaintiff's claims against the individual Defendants sounding in state tort law. The individual Defendants had argued that the Federal Tort Claims Act precludes Plaintiff from asserting tort claims against individual federal employees, and after Plaintiff failed to respond to this aspect of Defendants' motion, the Court granted this aspect of Defendants' motion as uncontested. See id. at *14-15. Third, the Court dismissed each of Plaintiff's Title VII claims against the Social Security Administration. Plaintiff had claimed that the Social Security Administration violated Title VII's prohibition on making employment decisions on the basis of

---

[3]      The court also stated that, even if the appeal had not been moot, the court would have affirmed the district court's denial of his motion for preliminary injunctive relief because Plaintiff failed to make a clear showing of irreparable harm. See Bridges, 607 F. App'x at 171 n.7. The court rejected Plaintiff's argument that irreparable harm should be presumed under these circumstances, observing that the Third Circuit "has expressly rejected such a presumption in employment discrimination cases." Id. (citing Marxe v. Jackson, 833 F.2d 1121, 1127 (3d Cir. 1987)).

[4]      In the same appeal, Plaintiff also challenged a separate order this Court issued on the same day that the Court denied Plaintiff's motion for preliminary injunctive relief, in which the Court granted Defendants' motion to dismiss a supplemental pleading Plaintiff had filed on November 15, 2013 and to deny Plaintiff's request for leave to file a second supplemental pleading. See Order, Feb. 24, 2014, ECF No. 48; Notice of Appeal 1. Plaintiff had failed to file any opposition to Defendants' motion, and the Court granted Defendants' motion in both respects as uncontested. See id. at 4 & n.4. The Third Circuit dismissed this portion of Plaintiff's appeal for lack of jurisdiction because the Court's order granting Defendants' motion "was not a final decision appealable under 28 U.S.C. § 1291." See Bridges, 607 F. App'x at 171.

race, creating a hostile work environment, and retaliating against an employee who engages in

conduct protected by the statute. With respect to Plaintiff's hostile work environment claim,

Defendants had argued that Plaintiff's complaint failed to plead facts sufficient to state such a

claim, and, after Plaintiff failed to respond to this aspect of Defendants' motion, the Court

granted that aspect of Defendants' motion as uncontested. See id. at *15. With respect to

Plaintiff's claims of discrimination on the basis of an adverse employment action and retaliation

arising out the removal of Plaintiff as HOCALJ, the Court granted Defendants' motion to

dismiss those claims because Plaintiff failed to timely exhaust his administrative remedies before

seeking judicial relief. The Court explained that before a federal employee may sue for violations

of Title VII in federal court, the employee "must initiate contact with an EEO counselor within

45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel

action, within 45 days of the effective date of the action." See id. (quoting Winder v. Postmaster

Gen. of the United States, 528 F. App'x 253, 255 (3d Cir. 2013)). Plaintiff did not argue that he

had done so; rather, he contended that his failure to timely meet with an EEO counselor should

have been excused under the "discovery rule," which provides that the 45-day exhaustion period

may be tolled until an individual, exercising reasonable diligence, becomes aware of the injury

giving rise to the Title VII violation. The Court observed, however, that Plaintiff learned of his

removal from the HOCALJ position—the injury giving rise to his claims under Title VII that he

had been discriminated against on the basis of his race and retaliated against for prior claims he

filed with the EEOC—on the same day that he was removed from that position, but did not

contact an EEO counselor until more than four months later. Because nothing in Plaintiff's

complaint suggested that there was any gap in time between his alleged Title VII injury and his

discovery of that injury, the Court dismissed each of Plaintiff's remaining Title VII claims as

time-barred.[5] See id. at *16-17. Finally, the Court dismissed Plaintiff's claims of retaliation in violation of Title VII because Plaintiff failed to respond to Defendants' contention that his Amended Complaint did not set forth sufficient facts to state a retaliation claim. See id. at *17.[6]

The sole claim left standing in Plaintiff's Amended Complaint following this disposition is Count II, in which Plaintiff alleges that Defendants violated his procedural due process rights under the Fifth Amendment by removing him from his position as HOCALJ without an opportunity for a hearing. See id. at *18.

On April 12, 2014, Plaintiff moved for reconsideration of the Court's decision to dismiss all but Count II of his Amended Complaint. Plaintiff contends that he did contest various aspects of Defendants' motion that the Court found to be uncontested, and that the Court's decision to grant, in part, Defendants' motion to dismiss his Amended Complaint rested on various "manifest errors of law." See Pl.'s Mot. Recons. and/or Reargument of Order Dated Mar. 28, 2014, ECF No. 63.

 On April 17, 2014, Defendants responded to Count II of Plaintiff's Amended Complaint by moving to dismiss that claim, arguing that the Court lacks subject matter jurisdiction over the claim and, alternatively, that Plaintiff has not stated a claim upon which relief can be granted. See Defs. Mot. Dismiss Count II of Pl.'s Am. Compl., ECF No. 65.

On April 23, 2014, Plaintiff filed a motion for leave to amend his Amended Complaint. Plaintiff seeks leave to add three additional claims arising out of revisions the Social Security Administration made to the position description for Administration ALJs. Plaintiff contends that

---

[5]     The Court also supplied a second reason for dismissing Plaintiff's retaliation claim. In addition to arguing that the retaliation claim was time-barred, Defendants had also argued that Plaintiff failed to plead facts sufficient to state the claim. Plaintiff failed to respond to that contention, and the Court observed that it could have granted Defendants' motion in this respect as uncontested. See id. at *17.

[6]     With respect to that aspect of Plaintiff's retaliation claim that arose out of his removal as HOCALJ, this decision supplied a second, independent basis to dismiss that aspect of his claim in addition to the fact that the claim was time-barred.

these revisions violate his constitutional rights and constitute retaliation against him in violation of Title VII. See Pl.'s Mot. Leave File Third Am. Compl., ECF No. 68.

While these three motions remained pending, Plaintiff again sought preliminary injunctive relief. On October 20, 2014, Plaintiff filed a motion for a temporary restraining order and preliminary injunctive relief. See Mot. TRO and Prelim. Injunctive Relief, ECF No. 73. Plaintiff sought to restrain the Social Security Administration from conducting a "focused review" of prior decisions he issued as an ALJ, an action which he contended was "illegal for various reasons." See Order 3 n.5, Oct. 24, 2014, ECF No. 78. After a hearing, the Court denied Plaintiff's motion, concluding that he had failed to demonstrate a likelihood of success on the merits of his contentions or that he would suffer any imminent, irreparable injury absent preliminary injunctive relief. See id. at 5 n.6. Plaintiff again appealed the denial of his request for preliminary injunctive relief to the Third Circuit, and his appeal is pending. See Notice of Appeal, ECF No. 80; Bridges v. Comm'r Soc. Sec., No. 14-4555 (3d Cir. appeal docketed Nov. 26, 2014).[7]

On March 20, 2015, Plaintiff filed a third motion for preliminary injunctive relief, and on September 9, 2015, the Court held a hearing on Plaintiff's motion and heard argument on the other motions presently pending before the Court.

This Memorandum Opinion concerns Plaintiff's motion for reconsideration of the Court's March 28, 2014 Order dismissing all but Count II of Plaintiff's Amended Complaint, Defendants' motion to dismiss Count II of Plaintiff's Amended Complaint, and Plaintiff's motion for leave to amend his Amended Complaint.

---

[7]   On March 13, 2015, this case was reassigned from the Honorable James Knoll Gardner to the undersigned.

**III.    Plaintiff's motion for reconsideration of the Court's March 28, 2014 Order supplies no grounds for the Court to disturb that Order.**

Plaintiff urges the Court to reconsider its March 28, 2014 Order dismissing all but Count II of his Amended Complaint. Plaintiff invokes both Federal Rule of Civil Procedure 59(e) and 60(b) as a basis for his motion for reconsideration, but neither is applicable. Rule 59(e), which states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment," is inapplicable because the Court's Order was not a "judgment." The Rules define the word "judgment" to mean "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). An order dismissing some, but not all, of a party's claims is neither a decree nor an order from which an appeal lies; rather, such an order is interlocutory in nature. See Andrews v. United States, 373 U.S. 334, 340 (1963) ("[T]he judgment to be appealable should be final not only as to all the parties, but as to the whole subject-matter and as to all the causes of action involved."); Pellicano v. Blue Cross Blue Shield Ass'n, 540 F. App'x 95, 97 n.4 (3d Cir. 2013) ("[B]ecause an order dismissing fewer than all claims or parties is generally not a final judgment, a Rule 59(e) motion to challenge such an order may only be filed after the district court enters the final judgment." (quoting Auto Servs. Co. v. KPMG, 537 F.3d 853, 856 (8th Cir. 2008))).

For the same reason, Rule 60(b) is also inapplicable. The Rule provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" for certain enumerated reasons. The inclusion of the word "final" in the text of the Rule means that "interlocutory judgments are not brought within the restrictions of the rule." Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment; Torres v. Chater, 125 F.3d 166, 168 (3d Cir. 1997) (observing that "purely interlocutory" orders do not fall within the scope of Rule 60(b), "which applies only to 'final' judgments and orders").

9

Thus, "neither Rule 59(e) nor 60(b) applies here because the order [Plaintiff] seeks to have reconsidered is not a final judgment or order but rather an interlocutory decision." See Jairett v. First Montauk Sec. Corp., 153 F. Supp. 2d 562, 579 (E.D. Pa. 2001); Am. Guar. & Liab. Ins. Co. v. Fojanini, 99 F. Supp. 2d 558, 560 (E.D. Pa. 2000). Instead, Plaintiff's only recourse is to this Court's "inherent power over interlocutory orders," which permits the Court to "reconsider them when it is consonant with justice to do so." See United States v. Jerry, 487 F.2d 600, 605 (3d Cir. 1973) (citing United States v. Bryson, 16 F.R.D. 431, 435 (N.D. Cal. 1954), aff'd, 238 F.2d 657 (9th Cir. 1956)); Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment (observing that interlocutory orders are "subject to the complete power of the court rendering them to afford such relief from them as justice requires"); In re Res. Am. Sec. Litig., No. CIV. 98-5446, 2000 WL 1053861, at *2 (E.D. Pa. July 26, 2000) (resorting to the court's inherent powers to reconsider an interlocutory order). This power should be exercised sparingly, however, to preserve the interest in finality inherent in judicial decision-making. See In re Res. Am. Sec. Litig., 2000 WL 1053861, at *2 (citing Rottmund v. Cont'l Assurance Co., 813 F. Supp. 104, 1107 (E.D. Pa. 1992)). Thus, "[c]ourts tend to grant motions for reconsideration sparingly and only upon the grounds traditionally available under [Rule] 59(e)." A&H Sportswear Co. v. Victoria's Secret Stores, Inc., No. Civ.A. 94-7408, 2001 WL 881718, at *1 (E.D. Pa. May 1, 2001) (Van Antwerpen, J.). The purpose of a motion under Rule 59(e) is to "correct manifest errors of law or fact or to present newly discovered evidence," which means that "[a] proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669

(3d Cir. 2010) (citing <u>Max's Seafood Café v. Quinteros</u>, 176 F.3d 669, 677 (3d Cir. 1999); <u>N.</u>

<u>River Ins. Co. v. CIGNA Reinsurance Co.</u>, 52 F.3d 1194, 1218 (3d Cir. 1995)).

      The Court need not reach the merits of Plaintiff's motion for reconsideration, however,

because Plaintiff's motion is untimely. "Motions for reconsideration or reargument shall be

served and filed within fourteen (14) days after the entry of the order concerned, other than those

governed by Federal Rule of Civil Procedure 59(e)." E.D. Pa. Local R. Civ. P. 7.1(g). As the

Court has observed, Plaintiff's motion does not arise under Rule 59(e); therefore, Plaintiff had

until April 11, 2014—fourteen days from the date of the Court's order that he challenges—to file

and serve his motion. Plaintiff filed his motion on April 12, 2014, the fifteenth day. The Court,

therefore, may deny Plaintiff's motion on this basis. <u>See</u> <u>Oldcastle Precast, Inc. v. VPMC, Ltd.</u>,

No. 12-6270, 2013 WL 3865112, at *2 (E.D. Pa. July 26, 2013) (denying a motion for

reconsideration that was not filed within fourteen days after the entry of the challenged order);

<u>see also</u> <u>United States v. Eleven Vehicles, Their Equip. & Accessories</u>, 200 F.3d 203, 214 (3d

Cir. 2000) ("[I]t is not an abuse of discretion for a district court to impose a harsh result, such as

dismissing a motion or an appeal, when a litigant fails to strictly comply with the terms of a local

rule."). Plaintiff neither acknowledges that his motion is untimely nor attempts to invoke the

Court's discretion to depart from the local procedural rules. <u>See</u> <u>Eleven Vehicles</u>, 200 F.3d at

215 ("[A] district court can depart from the strictures of its own local procedural rules where (1)

it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has

relied on the local rule to his detriment.").

      Even if the Court were to entertain Plaintiff's motion, the Court finds no clear error of

law or manifest injustice in the Order, nor any other basis to revisit the outcome. Plaintiff

challenges the Court's Order on three grounds: first, he contends that the Court was mistaken in

concluding that he failed to oppose certain aspects of Defendants' motion to dismiss his Amended Complaint. Second, he contends that the Court's decision contains "manifest errors of law." Third, he contends that the Court incorrectly concluded that his hostile work environment and retaliation claims were time-barred. None of these contentions are meritorious.

**A.     The Court correctly concluded that Plaintiff failed to oppose Defendants' motion to dismiss his hostile work environment and retaliation claims.**

The Court dismissed Plaintiff's hostile work environment and retaliation claims against the Social Security Administration because Plaintiff failed to respond to Defendants' contention that his Amended Complaint did not contain facts sufficient to support either claim. See Bridges, 2014 WL 1281158, at *15 ("Plaintiff's Memorandum does not address or respond to defendants' argument that his Amended Complaint fails to state sufficiently a hostile-work-environment claim under Title VII. Accordingly, . . . I grant defendants' Motion to Dismiss as uncontested . . . ."); id. at *17 ("Although plaintiff did respond to defendants' argument that removal from the HOCALJ position was not an adverse employment action . . . , Plaintiff's Memorandum does not otherwise respond to defendants' argument that he failed to plead sufficient facts to support the other necessary elements of a Title VII retaliation claim. Accordingly, . . . I grant defendants' Motion to Dismiss as uncontested . . . .").

Plaintiff argues that the Court overlooked his arguments in opposition to Defendants' motion to dismiss these claims, and that the Court was therefore mistaken in concluding that Defendants' motion was uncontested. Plaintiff does not, however, contend that the Court overlooked any arguments or materials that were contained in his opposition to Defendants' motion. Rather, Plaintiff directs the Court to various arguments and materials scattered throughout the record of this action (and other materials Plaintiff claims are in the public record), arguing that his opposition to Defendants' motion can be found in these places.

This argument misapprehends the basis upon which a motion may be granted as unopposed. A party may not stand silent in the face of a motion, expecting the Court to generate arguments on the party's behalf by piecing together arguments and materials scattered throughout the record of the case. "To put it simply: plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." Celestial Cmty. Dev. Corp. v. City of Phila., 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012); see Nelson v. DeVry, No. 07-4436, 2009 WL 1213640, at *10 (E.D. Pa. Apr. 23, 2009) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed."); see also Celestial, 901 F. Supp. 2d at 578 (collecting cases). Thus, the Court did not clearly err—or err at all—in concluding that Defendants' motion was unopposed in certain respects and granting Defendants' motion in those respects.

But even if the Court were to consider now, for the first time, the arguments and materials Plaintiff belatedly calls to the Court's attention, they still fail to do what Plaintiff failed to do in his opposition to Defendants' motion: respond to Defendants' contention that his Amended Complaint fails to state a hostile work environment or retaliation claim.

Plaintiff first argues that the Court should have taken notice of two documents he claims are a matter of public record. Plaintiff contends that the "HALLEX Manual cited in Plaintiff's Amended Complaint, . . . which was the basis for Plaintiff's actions for which he was 'removed' as HOCALJ[,] is a matter of public record" and "[t]he same holds true for the 'ALJ Collective Bargaining Agreement'" that governs the relationship between HOCALJs and subordinate ALJs. See Pl.'s Br. Supp. Mot. Recons. and/or Reargument of Order Dated Mar. 28, 2014 7-8, ECF No. 63-1. That may be so, but Plaintiff does not explain how either of these documents shows that his

Amended Complaint adequately states either a hostile work environment or retaliation claim under Title VII. Rather, Plaintiff merely states that "facts supportive of [Plaintiff's] contentions stem from [these] documents and Plaintiff's references thereto, that are matters of public record." Id. at 7. Defendants contended in their motion to dismiss Plaintiff's hostile work environment claim that his Amended Complaint does not contain any facts to suggest the existence of conduct on the part of Defendants that was "sufficiently severe or pervasive to state such a claim." See Bridges, 2014 WL 1281158, at *15. Plaintiff does not explain how the HALLEX Manual or the ALJ Collective Bargaining Agreement, or facts that "stem from" these documents, show that his Amended Complaint contains factual allegations necessary to support a hostile work environment claim. With respect to his retaliation claim, Defendants argued that Plaintiff failed to assert "any facts that support his claim of retaliation," which requires him to show that "(1) he engaged in activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." See Bridges, 2014 WL 1281158, at *17. As with Plaintiff's hostile work environment claim, Plaintiff's motion for reconsideration does not explain how the HALLEX Manual or the ALJ Collective Bargaining Agreement shows that his Amended Complaint contains factual allegations necessary to support a retaliation claim.

Next, Plaintiff directs the Court to two documents that contain the Social Security Administration's position description for the ALJ position—one document contains the position description effective as of June 4, 2014, while the other contains an updated version of the description effective as of December 23, 2013. See Pl.'s Mot. Recons. and/or Reargument ¶¶ 4-5. Both documents were filed with the Court as exhibits to a supplemental pleading that Plaintiff

sought leave to file,[8] leave which the Court denied on February 24, 2014—one month prior to

rendering a decision on Defendants' motion to dismiss his Amended Complaint. See Order, Feb.

24, 2014, ECF No. 48. Nonetheless, Plaintiff contends that these documents were "presented to

the Court for consideration pursuant to applicable Federal Rules of Civil Procedure"—despite

the fact that Plaintiff never mentioned them in his opposition to Defendants' motion to dismiss—

and that the "failure of the court to consider these documents" in connection with Defendants'

motion supplies a basis for reconsideration of the Court's decision to dismiss his hostile work

environment and retaliation claims. See Pl.'s Mot. Recons. and/or Reargument ¶ 5. As with

Plaintiff's reference to the HALLEX Manual and the ALJ Collective Bargaining Agreement,

Plaintiff again fails to explain how these documents show that the allegations in his Amended

Complaint make out either a hostile work environment or retaliation claim. The only explanation

Plaintiff offers in his motion for reconsideration is that these documents "are significant for

purposes of the Court's consideration of the substantive counts in Plaintiff's Amended

Complaint regarding allegations of a racially-motivated, hostile working environment, and

racially-based retaliation against Plaintiff for engaging in protected activity." Id. ¶ 6.[9]

---

[8]       See App. to Pl.'s Mot. Suppl. App. #2 and App. #3 to Ex. 1 of Doc. #41, ECF No. 43-2.

[9]       Concurrent with the filing of his motion for reconsideration, Plaintiff also filed a motion seeking to have
the Court take judicial notice of these two documents. See Motion for Judicial Notice in Support of Motion for
Rehearing and/or Reargument of Order Dated March 28, 2014, ECF No. 62. That motion also does not explain how
these documents are relevant to the question of whether Plaintiff's Amended Complaint states either a hostile work
environment or retaliation claim. The brief accompanying the motion states only that "[s]ubstantial rights of the
Plaintiff are implicated as a result of the revised position description" and that the Court should "consider said
documents in its disposition of the motions to dismiss." See Pl.'s Br. Supp. Mot. Judicial Notice 8-9, ECF No. 62-2.
        As the Court has observed, these documents were also the subject of a supplemental pleading that Plaintiff
requested leave to file, leave which the Court denied. In that proposed supplemental pleading, Plaintiff claimed that
the Social Security Administration's decision to revise the ALJ position description in December 2013 was (i)
"actionable evidence of a racially hostile work environment," (ii) an "employment action" that violated Plaintiff's
Fourth and Fifth Amendment rights, and (iii) "the product of invidious and/or intentional discrimination" against
African-American candidates for the position of HOCALJ. See Pl.'s Proposed Second Suppl. Pleading ¶¶ 18-21,
ECF No. 41-1. If the relationship of these documents to this action is that these documents allegedly evidence new,
unlawful employment actions Defendants have taken against Plaintiff that occurred after he initiated this action,
these documents necessarily have no relevance to the question of whether the existing allegations in Plaintiff's
Amended Complaint are sufficient to state a retaliation or hostile work environment claim.

Third, Plaintiff claims that the Court "overlooked the factual declarations contained in his motions seeking injunctive relief," which he claims "detail a continuing pattern of racially-based, discrimination and retaliation directed against Plaintiff in the conduct of his employment." Pl.'s Mot. Recons. and/or Reargument ¶ 16. Plaintiff argues that, "[n]otwithstanding [that] Plaintiff's motion for injunctive relief was dismissed, its factual allegations cannot be disregarded and/or voided." Id. But as Plaintiff himself recognizes in his motion for reconsideration, the only materials the Court may consider in assessing the sufficiency of a complaint are "the complaint, attached exhibits, and matters of public record." See Pl.'s Br. Supp. Mot. Recons. and/or Reargument 7 (citing Bridges, 2014 WL 1281158, at *3). "In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered." Land v. Dollar, 330 U.S. 731, 735 n.4 (1947).

Finally, Plaintiff contends that a passage in a brief he filed in support of his earlier, separate motion for leave to file a supplemental pleading "clearly addresses Plaintiff's position regarding hostile work environment and retaliation."[10] Pl.'s Mot. Recons. and/or Reargument ¶ 11. This passage, of course, was not contained or referenced in Plaintiff's opposition to Defendants' motion to dismiss his Amended Complaint, but he nonetheless "urges the Court to review [this] brief . . . as it appears that this document was overlooked." Id. ¶ 12. This passage, however, does not address the question of whether the allegations in Plaintiff's Amended Complaint are sufficient to state either a hostile work environment or retaliation claim. Rather, the passage merely refers to the Social Security Administration's December 2013 revisions to the ALJ position description, which the Court has already reviewed, and contains a reference to the

---

[10] As the Court has already observed, the Court denied that motion approximately one month prior to the Court's disposition of Defendants' motion to dismiss Plaintiff's Amended Complaint.

fact a court must consider the totality of the circumstances when assessing a hostile work environment claim. See id. ¶ 11 (stating, in relevant part, that "Plaintiff would note that pursuant to a hostile working environment allegation, . . . the court will examine incidents that are alleged to be part of a continuing pattern. This may be referred to as a 'totality of the circumstances' approach").[11] This passage does not address Defendants' contention that Plaintiff's Amended Complaint does not contain any facts to suggest the existence of conduct on the part of Defendants that was sufficiently severe or pervasive to state a hostile work environment claim.

To summarize, Plaintiff's contention that the Court mistakenly concluded that he failed to oppose Defendants' motion to dismiss his hostile work environment and retaliation claims lacks merit because none of the materials that he claims the Court overlooked were contained or referenced in his opposition to Defendants' motion. Even if the Court were to entertain these materials and arguments now, none of them address Defendants' contention that Plaintiff's

---

[11]    Plaintiff's motion for reconsideration also misquotes the passage that he urges the Court to consider. Plaintiff purports to quote a passage from the brief he filed in support of his motion to file a supplemental pleading as follows:

> The decision is probative of Plaintiff's allegations of retaliation and hostile working environment. Plaintiff would note that pursuant to a hostile working environment allegation, the Third Circuit, pursuant to the directives of <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), the court will examine incidents that are alleged to be a part of a continuing pattern. This may be referred to as a "totality of the circumstances" approach. See <u>Mandel v. M&Q Packing Corp.</u>, 706 F.3d 157 (3rd Cir. 2013). (emphasis added)

Pl.'s Mot. Recons. and/or Reargument ¶ 11. The original passage in his brief, by contrast, states the following:

> The December 23, 2013, Revised Position Description, PD #2E089,is Probative, Though Not Dispositive, of Plaintiff's Hostile Work Environment Counts. The Third Circuit, pursuant to the directives of <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006), will examine incidents that are alleged to be a part of a continuing pattern of alleged, hostile work environment. This is referred to as a "totality of the circumstances" approach. See <u>Mandel v. M&Q Packing Corp.</u>, 706 F.3d 157 (3rd Cir. 2013) . . . .

Pl.'s Br. Supp. Second Mot. Leave File Suppl. Pleading 10-11, ECF No. 41-4. In addition to various differences in phrasing, the original passage refers only to Plaintiff's hostile work environment claim, while the "quotation" of this passage set forth in his motion for reconsideration conspicuously adds a reference to Plaintiff's retaliation claim, and subtracts one of the references to his hostile work environment claim. Plaintiff contends in his motion for reconsideration that this passage "clearly addresses Plaintiff's position regarding hostile work environment and retaliation," <u>see</u> Pl.'s Mot. Recons. and/or Reargument ¶ 11, despite the fact that the original passage makes no reference to his retaliation claim. The Court assumes that these discrepancies were merely an oversight.

Amended Complaint fails to allege sufficient facts to state either a hostile work environment or retaliation claim.

**B.      Plaintiff's contention that the Court made "manifest errors of law" lacks merit.**

Plaintiff contends that the Court erred in its decision to dismiss Plaintiff's Title VII claims by failing to recognize that "Defendants have not proffered any business justification" for the removal of Plaintiff from his position as HOCALJ, in accordance with the <u>McDonnell Douglas</u>[12] burden-shifting framework that governs that review of Title VII claims. <u>See</u> Pl.'s Br. Supp. Mot. Recons. and/or Reargument 8-9. Plaintiff calls the Court's attention to the fact that "[t]o date, the record does not contain any statement, factual representation, or counter-justification for the action taken against Plaintiff." <u>Id.</u> at 9.

Plaintiff's argument misapprehends the nature of the <u>McDonnell Douglas</u> framework. Before a defendant is required to come forward with a legitimate, non-discriminatory reason for taking a challenged employment action, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." <u>McDonnell Douglas</u>, 411 U.S. at 802. Here, rather than answer Plaintiff's Title VII claims, Defendants opted to challenge whether Plaintiff's Amended Complaint contained sufficient facts to make out prima facie Title VII claims, and Plaintiff's claims did not withstand that challenge. Therefore, Plaintiff's claims never reached the next "step" of the <u>McDonnell-Douglas</u> framework, where the burden would have shifted to Defendants to come forward with a legitimate, non-discriminatory reason for removing Plaintiff from his position as HOCALJ. There is no error of law here.

---

[12]      <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

C.      **Plaintiff's contention that the Court incorrectly concluded that Plaintiff's hostile work environment and retaliation claims were time-barred lacks merit.**

Plaintiff renews his argument that the "discovery rule" and the "continuing violations doctrine" establish that his hostile work environment and retaliation claims are not barred by his failure to timely contact an EEO counselor. See Pl.'s Br. Supp. Mot. Recons. and/or Reargument 10-11. The Court considered both of these contentions before proceeding to grant Defendants' motion to dismiss these claims. See Bridges, 2014 WL 1281158, at *11 (discussing Plaintiff's contention that "the continuing-violation theory and the discovery rule each apply and render his Title VII claims timely"). With respect to Plaintiff's hostile work environment claim, that claim was dismissed not because the claim was untimely, but because Plaintiff failed to respond to Defendants' argument that his Amended Complaint did not contain allegations of any conduct that was "sufficiently severe or pervasive to state such a claim." See Bridges, 2014 WL 1281158, at *15-16 (expressly declining to "address plaintiff's continuing violation argument concerning the timeliness" of his hostile work environment claim because the Court dismissed that claim on other grounds).

With respect to Plaintiff's retaliation claim, the Court dismissed this claim for two separate reasons: first, that Plaintiff failed to respond to Defendants' argument that his Amended Complaint failed to assert "any facts that support his claim of retaliation." See id. at *17. Second, the Court concluded that, to the extent Plaintiff's retaliation claim is based on his removal as HOCALJ, that claim is time barred. See id. at *15-17. That narrower, second rationale for dismissing a component of his retaliation claim is the only aspect of Plaintiff's retaliation claim that the Court held was time-barred, and the Court was correct in that assessment. The "continuing violations doctrine" has no applicability here, because the alleged act of retaliation—Plaintiff's removal from the position of HOCALJ—is a "discrete act," and "a Title

VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period." See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14, 122 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."). "Morgan established a bright line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitations period or they will not support a lawsuit." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006).

Nor does the "discovery rule" apply. The discovery rule is a doctrine that supports the tolling of limitations periods under the theory that the accrual date for an action "is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff discovers that he or she has been injured."[13] Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385-86 & n.5 (3d Cir. 1994) (observing that the rule's origins lie in products liability and medical malpractice cases, but that the rule has been subsequently applied to employment discrimination cases). As the Court previously observed, Plaintiff alleges that he was removed from his position as HOCALJ on June 4, 2010, see Am. Compl. ¶ 62, and "Plaintiff avers that defendant Bede informed him of the removal on June 4, 2010." See Bridges, 2014 WL 1281158, at *16; Am. Compl. ¶ 75; Am. Compl. Ex., at 106a, ECF No. 30-2. Because Plaintiff discovered his alleged injury on the same day the alleged injury occurred, the discovery rule has no role to play. See Oshiver, 38 F.3d at 1386-87 (holding that, where the plaintiff discovered the injury on

---

[13]     The federal regulation that prescribes the requirement that a federal employee contact an EEO counselor within forty-five days of the discriminatory action embraces the rule, providing that the forty-five-day period may be extended "when the individual shows that he or she . . . did not know and reasonably should not have known that the discriminatory matter or personnel action occurred." See 29 C.F.R. § 1614.105(a)(2).

"the very date defendant . . . informed her of her discharge," the discovery rule offered "no relief in relation to the timeliness of the filing of her discriminatory discharge claim").

Thus, the Court did not err in failing to apply either the continuing violations doctrine or the discovery rule to Plaintiff's hostile work environment and retaliation claims. Both Plaintiff's hostile work environment and retaliation claims were dismissed for reasons other than the timeliness of those claims, and with respect to Plaintiff's claim that his removal as HOCALJ constituted unlawful retaliation, the Court was correct that neither the continuing violations doctrine nor the discovery rule prevented that claim from being time barred.

**D.    Conclusion**

Plaintiff's motion for reconsideration is untimely under Local Rule 7.1(g) and subject to denial on that ground, but even if the Court were to entertain the merits of Plaintiff's motion, Plaintiff's arguments supply no basis for the Court to disturb its March 28, 2014 Order. Plaintiff's contention that the Court was mistaken in concluding that he failed to oppose certain aspects of Defendants' motion to dismiss lacks merit, and even if the Court were to consider the arguments and materials Plaintiff now presents to the Court in opposition to Defendants' motion to dismiss, they fail to respond to Defendants' argument that Plaintiff's Amended Complaint does not contain adequate factual allegations to state either a hostile work environment or retaliation claim. Plaintiff's further contentions that the Court erred as a matter of law are meritless. Accordingly, Plaintiff's motion for reconsideration is denied.

**IV.    Defendants' Motion to Dismiss Count II of Plaintiff's Amended Complaint is Granted.**

Defendants have moved to dismiss Plaintiff's sole remaining claim on the grounds that the Court lacks jurisdiction to entertain this claim and that Plaintiff has failed to state a claim

upon which relief can be granted.[14] In this claim, pled as Count II of Plaintiff's Amended

Complaint, Plaintiff seeks equitable and declaratory relief for an alleged violation of his Fifth

Amendment procedural due process rights. Plaintiff contends that his removal from the position

of HOCALJ without an opportunity for a hearing deprived him of a property interest without due

process of law. See Am. Compl. ¶¶ 79-82. Defendants contend that this Court cannot hear

Plaintiff's claim because the administrative review procedures set forth in the Civil Service

Reform Act of 1978 ("CSRA") supply the exclusive forum for Plaintiff to pursue this claim.[15]

Defendants further contend that Plaintiff has failed to state a claim for a violation of his Fifth

Amendment rights because he had no property interest in his position as HOCALJ. The Court

addresses Defendants' jurisdictional challenge first.

**A.    This Court may exercise jurisdiction over Plaintiff's claim for equitable and declaratory relief founded on an alleged violation of his Fifth Amendment rights to due process.**

Defendants contend that the proper place for Plaintiff to pursue his due process claim is

with the U.S. Office of Special Counsel ("OSC") pursuant to the procedures afforded by the

---

[14]    In a previous order, the Court denied Plaintiff's motion to strike Defendants' motion to dismiss this claim. See Order, September 10, 2015, ECF No. 101. Plaintiff had argued that Defendants' motion was procedurally improper because Defendants had filed a previous motion to dismiss his Amended Complaint—the subject the Court's March 28, 2014 Order just discussed at length—and Rule 12(g) of the Federal Rules of Civil Procedure restricts the ability of a party to raise defenses under Rule 12 in successive motions. The Court initially observed that Defendants' motion raises a challenge to the Court's jurisdiction to hear Plaintiff's remaining claim and pointed out that a party may challenge a court's subject matter jurisdiction at any time. With respect to Defendants' challenge to the factual sufficiency of his claim, the Court recognized that Rule 12(g) bars a party from raising that defense in a successive pre-answer motion. However, the Court observed that, "[d]espite the technical wording of the rule, . . . courts have not required a defendant who seeks to raise the defense of failure to state a claim to wait until one of the enumerated stages [in Rule 12(h)(2)]; instead, courts permit this defense to be raised by way of a successive Rule 12(b)(6) motion." Id. at 1 n.1 (quoting Hayes ex rel. Estate of Hayes v. Invigorate Int'l, Inc., No. Civ.A.04-1577, 2004 WL 2203732, at *3 (E.D. Pa. Sept. 24, 2004)). In light of the fact that Defendants' challenge to the Court's subject matter jurisdiction is properly before the Court, the Court agreed, in the interest of the efficient administration of justice, to also entertain Defendants' alternative argument that Plaintiff has failed to state a claim.

[15]    While, as will be seen, the CSRA precludes the federal courts from exercising jurisdiction over nearly all claims related to personnel actions taken against federal employees, one exception applies to so-called "mixed cases," which arise when "an employee complains of a personnel action serious enough to appeal to the [Merit Systems Protection Board] and alleges that the action was based on discrimination." See Kloeckner v. Solis, 133 S. Ct. 596, 601 (2012) (citing 29 C.F.R. § 1614.302 (2012)). While Plaintiff has raised allegations of discrimination, the personnel action in question—Plaintiff's removal from his position as HOCALJ—was not serious enough to entitle him to appeal the decision to the Merit Systems Protection Board. Therefore, this case is not a "mixed case."

CSRA for federal employees to challenge the propriety of certain employment actions. "The

CSRA 'established a comprehensive system for reviewing personnel action taken against federal

employees.'" Elgin v. Dep't of the Treasury, 132 S. Ct. 2126, 2130 (2012) (quoting United

States v. Fausto, 484 U.S. 439, 455 (1988)). The types of "personnel actions" that fall within the

scope of the CSRA are varied, and include such actions as removals, suspensions, reductions in

grade and pay, promotions, transfers, reassignments, and "any other significant change in duties,

responsibilities, or working conditions." See 5 U.S.C. §§ 2302(a)(2), 7521; Krafsur v.

Davenport, 736 F.3d 1032, 1034 (6th Cir. 2013) (citing 5 U.S.C. § 2302(a)(2)). The precise

procedures that the CSRA prescribes for the review of a particular personnel action depend upon

"the severity of the personnel action and the rank of the employee." Krafsur, 736 F.3d at 1034.

For an ALJ such as Plaintiff, there are generally two different channels of review that may be

available, and which one applies depends upon the severity of the personnel action:

> Generally speaking, the Act divides covered actions into two categories: adverse
> actions and prohibited personnel practices. See Carducci v. Regan, 714 F.2d 171,
> 175 (D.C.Cir.1983) (Scalia, J.). Adverse actions are the most serious the
> government may take against its employees. For administrative law judges, these
> include removal, suspension, reduction in grade, reduction in pay and some
> furloughs. 5 U.S.C. § 7521. The Act entitles an employee facing an adverse action
> to a formal hearing before the Merit Systems Protection Board and if necessary an
> appeal to the Federal Circuit. Id. §§ 7521, 7703.
>
> Prohibited personnel practices are less serious than adverse actions. The Act
> defines this category broadly. It includes violations of "any law, rule, or
> regulation implementing, or directly concerning, . . . merit system principles," id.
> § 2302(b)(12), which in turn entitle employees to "fair and equitable treatment in
> all aspects of personnel management," to insist upon "proper regard for . . .
> constitutional rights," and to prohibit "arbitrary action," id. § 2301(b). An
> employee faced with a prohibited personnel practice must first complain to the
> Office of Special Counsel. If the Special Counsel concludes that "there are
> reasonable grounds to believe that a prohibited personnel practice has occurred,"
> he must report his conclusion to the agency. Id. § 1214(b)(2)(B). If the agency
> fails to take corrective action, the Special Counsel may refer the case to the Merit
> Systems Protection Board (from which the employee may appeal to the Federal
> Circuit). Id. §§ 1214(b)(2)(C), 1214(c). But if the Special Counsel concludes that

> the complaint lacks merit, or if he declines to refer the case to the Board, the employee is out of luck. A court may not review the Special Counsel's decisions unless the Counsel "has declined to investigate a complaint at all." Carson v. U.S. Office of Special Counsel, 633 F.3d 487, 493 (6th Cir.2011).

Id. Thus, if an ALJ seeks to challenge a more serious "adverse action," the ALJ is entitled to judicial review of the action in the United States Court of Appeals for the Federal Circuit after the employee has participated in a formal administrative hearing before the Merit Systems Protection Board ("MSPB"). But, if an ALJ seeks to challenge an employment action that does not rise to the level of an adverse action, the ALJ is not entitled to judicial review of that action. Only if the OSC elects, in its discretion, to refer the ALJ's complaint to the MSPB is the possibility of subsequent judicial review unlocked. If the OSC elects not to do so, "the employee is out of luck."

The Federal Circuit, which is the sole federal court vested with the jurisdiction to review the propriety of the more serious "adverse actions," has held that stripping a Social Security Administration ALJ of the title "HOCALJ" is not an "adverse action" because doing so is not tantamount to a removal, suspension, reduction in grade, reduction in pay, or a furlough of the ALJ. Butler v. Soc. Sec. Admin., 331 F.3d 1368, 1373 (Fed. Cir. 2003). The court observed that losing the title of Hearing Office Chief merely divested the ALJ of various administrative and managerial responsibilities over the ALJ's local hearing office and did not affect the ALJ's pay or grade or the ALJ's statutory-prescribed duties to conduct hearings. See id. at 1372-74.

Thus, Plaintiff's challenge to the process by which he was stripped of his title as HOCALJ instead involves one of the lesser species personnel actions: a "prohibited personnel practice." This is so because that term includes "tak[ing] or fail[ing] to take any . . . personnel action if the taking of or failure to take such action violations any law, rule, or regulation implementing, or directly concerning, the merit systems principles," and one of the merit systems

24

principles, in turn, is that "[a]ll employees . . . should receive fair and equitable treatment in all respects of personnel management . . . with proper regard for their . . . constitutional rights." See 5 U.S.C. §§ 2301(b)(2), 2302(b)(12); See Saul v. United States, 928 F.2d 829, 834 (9th Cir. 1991) (citing H.R. Rep. No. 95-1717 (1978), as reprinted in 1978 U.S.C.C.A.N. 2860, 2865) ("Congress did expect 'prohibited personnel practices' to cover supervisors' violations of employees' constitutional and privacy rights."); Spagnola v. Mathis, 859 F.2d 223, 249 n.3 (D.C. Cir. 1988); Jarvis v. Cardillo, No. 98 CIV. 5793, 1999 WL 187205, at *9 (S.D.N.Y. Apr. 6, 1999) (observing that the CSRA has been interpreted "flexibly to cast a wide net over constitutional challenges arising from federal employment"); Porter v. U.S. Dep't of Army, No. 93 C 6900, 1995 WL 461898, at *6 & n.4 (N.D. Ill. July 17, 1995) (recognizing that claims alleging due process violations arising out of employment actions "fall under the catch-all category of 'prohibited personnel practices'").

The question presented by Defendants' motion is whether Plaintiff's claim cannot be heard by this Court because Plaintiff's claim, arising out of a "prohibited personnel action," could instead be addressed through the remedial procedures prescribed by the CSRA.

The CSRA was enacted largely to "replace the haphazard arrangements for administrative and judicial review of personnel action" affecting federal employees, which had developed into an "'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." United States v. Fausto, 484 U.S. 439, 444 (1988) (quoting S. Rep. No. 95-969, at 3 (1978), as reprinted in 1978 U.S.C.C.A.N. 2723, 2725). The statute "comprehensively overhauled the civil service system," prescribing "in great detail the protections and remedies available" for federal employees subjected to adverse personnel actions. Id. (quoting Lindahl v. Office of Pers. Mgmt., 470 U.S. 768, 773 (1985)). Because of the

"comprehensive nature of the CSRA," the Supreme Court has interpreted the statute to preclude federal employees attempting to challenge personnel actions under other federal statutes directly in federal district court. See Elgin, 132 S. Ct. at 2133. This is so even if the remedial procedures applicable to a certain personnel action under the CSRA would not entitle the employee to any judicial review of the action, as is the case with an ALJ who seeks to challenge a "prohibited personnel practice." See Elgin, 132 S. Ct. at 2133 (citing Fausto, 484 U.S. at 448, 452). The Court reasoned that the lack of judicial review afforded by the statute for some personnel actions was not "an uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that [those employees] should not have statutory entitlement to review" of those actions. Fausto, 484 U.S. at 448-49. The comprehensive CSRA scheme also led the Court to decline to allow federal employees to seek money damages through Bivens[16] actions for personnel actions that violate their constitutional rights. See Bush v. Lucas, 462 U.S. 367, 390 (1983); Semper v. Gomez, 747 F.3d 229, 237 (3d Cir. 2014) ("At this time, it is undisputed that the CSRA precludes current or former federal employees from bringing a Bivens damages action for alleged constitutional violations arising out of the employment context."). Thus, for federal employees seeking relief for violations of their federal statutory rights or money damages for violations of their constitutional rights, "what you get under the CSRA is what you get," even if the CSRA gives you no review at all. See Fornaro v. James, 416 F.3d 63, 67 (D.C. Cir. 2005) (Roberts, J.).

Whether the CSRA precludes a federal employee from bringing a claim for equitable and declaratory relief for a constitutional violation, however, has proved more confounding. There is "something of a circuit split" on the answer to this question, with some circuits holding that the CSRA precludes federal employees from litigating constitutional claims for equitable relief just

---

[16]     Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

as the CSRA precludes federal employees from litigating statutory claims or constitutional claims for damages, while others have declined to interpret the CSRA as intending to strip the federal courts of jurisdiction over these claims.  See Elgin v. Dep't of the Treasury, 641 F.3d 6, 11 & n.4 (1st Cir. 2011), aff'd, 132 S. Ct. 2126; Semper v. United States, 694 F.3d 90, 96 (Fed. Cir. 2012). In 1995, the Third Circuit, aligning itself with the United States Court of Appeals for the District of Columbia Circuit, charted the latter course. In an opinion by then-Judge Alito, the court declined to bar three current or former federal employees from seeking injunctive and declaratory relief for violations of their First Amendment rights based on allegations that their supervisors had retaliated against them for statements they made concerning deficiencies in patient care at the Veterans Administration Medical Center. See Mitchum v. Hurt, 73 F.3d 30, 31-33 (3d Cir. 1995). The court quoted at length from the D.C. Circuit, calling attention in particular to that court's observation that, by contrast to the authority of the federal courts to craft damage remedies for constitutional violations, the "power to enjoin unconstitutional acts by the government . . . is inherent in the Constitution itself." See id. at 35 (quoting Hubbard v. EPA, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986) (citing Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803))). Reiterating that "[t]he power of the federal courts to grant equitable relief for constitutional violations has been long established" and recognizing that there is a presumption that equitable relief is available to redress threatened invasions of constitutional violations, the Court declined to interpret the CSRA to restrict the availability of such relief purely by implication of the comprehensive nature of the statute's remedial scheme, at least "[w]ithout more specific guidance from the Supreme Court." See id. at 35-36 (citing Ex Parte Young, 209 U.S. 123, 156 (1908); Osborn v. U.S. Bank, 22 U.S. (9 Wheat.) 738, 838-46 (1824); Hubbard, 809 F.2d at 11).

In 2012, the Supreme Court partially resolved the circuit split and supplied—at least in part—that more specific guidance the Mitchum court was seeking. See Semper, 747 F.3d at 241-42. In Elgin, the Court was presented with an attempt by federal employees to challenge the constitutionality of two federal statutes that, together, required them to be terminated from their employment because they had failed to register for the Selective Service. See 132 S. Ct. at 2130-31. Rather than attempt to pursue their CSRA-afforded remedies, the employees filed suit in federal district court, seeking "equitable relief in the form of a declaratory judgment that the challenged statutes [were] unconstitutional, an injunction prohibiting enforcement of [one of the statutes, reinstatement to their former positions," and certain monetary damages. See id. at 2131. The Court interpreted the CSRA to deprive the district court of jurisdiction to hear their claims, concluding that "it is fairly discernable that the CSRA review scheme was intended to preclude district court jurisdiction over petitioners' claims." Id. at 2140. Critical to the Court's conclusion was that these employees had been subjected to the more severe "adverse action" form of personnel action—namely, termination from their employment—which meant that they would have been entitled to judicial review in the Federal Circuit had they followed the CSRA procedures to their end. See id. at 2130-31. Before the Court engaged in the interpretive work of determining whether the CSRA stripped the district court of jurisdiction to hear the employee's claims, the Court addressed the standard that governed the Court's review of the statute. The employees argued that the Court should apply the interpretive rule pronounced by Webster v. Doe, 486 U.S. 592 (1988), "which held that 'where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear.'" Elgin, 132 S. Ct. at 2132 (quoting Webster, 486 U.S. at 603). Webster reasoned that a "heightened showing" of congressional intent is required before a statute can be read to "deny any judicial forum for a colorable

constitutional claim" in order to "avoid the 'serious constitutional question' that would arise" if a statute did so. See id. (quoting Webster, 486 U.S. at 603). The employees, of course, argued that Webster standard could not be met because the CSRA does not contain any language expressly stripping the district courts of their jurisdiction to hear constitutional claims for equitable relief. See id.

The Court, however, refused to apply the Webster standard. The Court observed that the Webster standard "does not apply where Congress simply channels judicial review of a constitutional claim to a particular court" and recognized that "the CSRA d[id] not foreclose all judicial review of [the employees'] constitutional claims, but merely direct[ed] that judicial review shall occur in the Federal Circuit." See id. at 2132-33. When confronted with the question of whether a statutory channeling scheme is intended to preclude other forums from exercising jurisdiction, the appropriate interpretive question to ask is "only whether Congress' intent to preclude district court jurisdiction [is] 'fairly discernible in the statutory scheme.'" See id. (quoting Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994)). Applying that standard, the Court had little difficulty concluding that it is "fairly discernable" from the CSRA's comprehensive scheme that the statute was intended to preclude federal employees from seeking relief in actions brought directly in federal district court, even when they seek equitable relief for constitutional violations. See id. at 2133- 36. Recognizing that it "was not the first time [the Court] ha[d] addressed the impact of the CSRA's text and structure on the availability of judicial review of a federal employee's challenge to an employment decision," and drawing from both "the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions" and the CSRA's "objective of creating an integrated scheme of review" to replace the former "patchwork of statutes and rules" that

protected aggrieved federal employees, the Court concluded that it was "fairly discernible" that the CSRA precluded district court review of the employees' constitutional claims. See id. (quoting Fausto, 484 U.S. at 444-45).

The linchpin of the Court's decision, therefore, was the fact that the CSRA guaranteed the employees the availability of judicial review in the Federal Circuit. The availability of judicial review made the rigorous Webster standard inapplicable, which allowed the Court to look past the fact that the CSRA does not expressly preclude federal district court jurisdiction over constitutional claims[17] and instead ask only whether it is "fairly discernible" from the statutory scheme that this is so. The guarantee of judicial review in the Federal Circuit also informed the Court's interpretation of the statute. The Court took note of the fact that the CSRA "exhaustively details the system of review before the MSPB and the Federal Circuit" and found that the structure of the CSRA evinces congressional intent to preclude other courts from exercising jurisdiction over claims that the CSRA channels to the MSPB and the Federal Circuit in order to secure "the primacy" of those tribunals' review of personnel actions. See id. at 2133-34 (quoting Fausto, 484 U.S. at 449) (citing 5 U.S.C. §§ 7701, 7703).

In 2014, the Third Circuit took stock of Elgin and the effect the decision had on Mitchum. The Court observed that Mitchum had "hesitantly reject[ed] [the] argument adopted by other circuits that 'a federal employee who has meaningful administrative remedies and a right to judicial review under the CSRA or another comparable statutory scheme should not be permitted to bypass that scheme by bringing can action under 28 U.S.C. § 1331 and seeking injunctive or declaratory relief." See Semper, 747 F.3d at 242 (quoting Mitchum, 73 F.3d at 34) (emphasis added). Recognizing that "Elgin effectively overruled Mitchum insofar as that decision had

---

[17]     See Hubbard, 809 F.2d at 11 n.15 (recognizing that the "CSRA did not explicitly limit [federal court] jurisdiction to enjoin unconstitutional personnel actions by federal agencies").

allowed plaintiffs who 'could have pursued administrative remedies to vindicate the alleged violations of their First Amendment rights' to seek equitable relief in district court." <u>see</u> <u>id.</u> at 242 (quoting <u>Mitchum</u>, 73 F.3d at 31), the court then proceeded to craft a rule of decision to govern whether the federal courts can assert jurisdiction over a federal employee's constitutional claim for equitable and declaratory relief:

> [T]he CSRA precludes a federal employee from litigating constitutional claims for equitable and declaratory relief in a § 1331 action where the employee could pursue meaningful relief under a remedial plan that provides for meaningful review of his or her claims by judicial officers. However, a federal employee who could not pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review has the right to seek equitable and declaratory relief for alleged constitutional violations in a "federal question" action filed pursuant to § 1331.

<u>See</u> <u>id.</u> This rule, the court said, "honors both our ruling in <u>Mitchum</u> as well as the Supreme Court's decisions in <u>Elgin</u> (as well as <u>Fausto</u>, <u>Bush</u>, and <u>Webster</u>)." <u>Id.</u>

The question before this Court, therefore, is whether a federal employee, like Plaintiff, who is not afforded a right to judicial review, but rather is only provided the means to raise his constitutional claim for equitable and declaratory with the OSC, which may, or may not, elect to refer his claim to the MSPB for further review (with subsequent review available in the Federal Circuit), is afforded "meaningful review of his or her claims by judicial officers" from this process. Neither <u>Elgin</u> nor <u>Semper</u> resolved this question because in both cases the federal employees were entitled to eventual judicial review of their constitutional claims.

Defendants urge that the Court does not need to resolve this question at this juncture, because even if this Court has jurisdiction to hear his claim, Plaintiff must first exhaust the remedies afforded to him by the CSRA before pressing his claim here. Plaintiff does not allege that he made any attempt to avail himself of his administrative remedies.

31

Defendants' approach is eminently reasonable, and comes recommended by more than one circuit.[18] Of course, the issue does not arise in those circuits that have held that the CSRA precludes a federal employee from bringing a claim related to a personnel action directly in federal district court. "[I]f the CSRA remedy is available and intended to be exclusive, it does not prescribe some administrative step required before resorting to district court; rather, the remedy displaces the plenary district court action entirely." See Elgin, 641 F.3d at 9 (citation omitted). But in the D.C. Circuit, which the Third Circuit joined in allowing federal employees to seek relief for constitutional claims requesting equitable relief, a federal employee must exhaust the remedies afforded by the CSRA before bringing the claim to the district court. See Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996). In addition, the First Circuit, assuming arguendo that the court could exercise jurisdiction over a constitutional claim brought by an employee whose only remedy under the CSRA, as with Plaintiff, was to submit his claim to the Office of Special Counsel, also held that the employee must first exhaust that administrative procedure. See Irizarry v. United States, 427 F.3d 76, 80 (1st Cir. 2005).

Forty years ago, the Supreme Court recognized that "[t]he doctrine of exhaustion of administrative remedies is well established in the jurisprudence of the administrative law," which provides "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."[19] See McKart v. United States, 395 U.S. 185, 193 (1969) (internal quotation marks omitted) (quoting Myers v. Bethlehem Shipbuilding Corp. 303 U.S. 41, 50-51 (1938)). "Notions of administrative autonomy require that the agency

---

[18]     Whether exhaustion is required before a district court may exercise jurisdiction over a federal employee's constitutional claim for equitable and declaratory relief—to the extent that any jurisdiction remains in the wake of Elgin—is an open question at the Supreme Court. See Whitman v. Dep't of Transp., 547 U.S. 512, 515 (2006) (per curiam) (remanding a case, in which a federal employee sought review in district court of a personnel action that he contended violated his constitutional rights, for the court of appeals to address, among other issues, "whether exhaustion is required given this statutory scheme").

[19]     The doctrine "is, like most judicial doctrines, subject to numerous exceptions." McKart, 395 U.S. at 193.

be given a chance to discover and correct its own errors," and compelling a party to pursue relief first from the agency respects the powers and duties that Congress has bestowed upon the agency. See id. at 194. Permitting the agency to "correct the violation or explain its decision" also promotes agency authority and accountability, Irizarry, 427 F.3d at 79, and advances the cause of judicial efficiency because the "complaining party may be successful in vindicating his rights in the administrative process." McKart, 395 U.S. at 194. The doctrine also has practical implications. The agency should be permitted the opportunity to bring its "special expertise" to bear on the problem and to "develop the necessary factual background upon which decisions should be based." See id. In addition, "[p]ermitting an employee to bypass the OSC entirely would permit the employee to avoid the remedial scheme that Congress enacted, even though nothing in the CSRA suggests that Congress intended resort to the OSC to be optional," Irizarry, 427 F.3d at 79, and allowing a party to flaunt these carefully-designed administrative procedures could weaken their effectiveness by encouraging others to ignore them. See McKart, 395 U.S. at 194.

If the Court were writing on a clean slate, the Court would require Plaintiff to avail himself of the CSRA procedures he is afforded seeking relief for his claim here, but the Court must reckon with the continuing vitality of Mitchum. In that case, before proceeding to hold that the court could exercise jurisdiction over the plaintiffs' claims, the court set forth, in detail, the administrative procedures that the CSRA afforded to each of the three plaintiffs. See 73 F.3d at 31-32. The court expressly recognized that, "[i]nstead of pursuing these remedies, the appellants filed an action in district court." See id. at 32. Nonetheless, the court held that the employees could proceed with their claims in the district court. Mitchum thus stands for the proposition that if jurisdiction exists in the federal courts to hear a federal employee's constitutional claim for

equitable relief, the employee is not required to first pursue whatever remedies the CSRA affords before bringing that claim to the district court.[20] See Irizarry, 427 F.3d at 79 n.4 (recognizing that Mitchum deviates from those courts that require administrative exhaustion). Elgin did not disturb this aspect of Mitchum, and this Court is obligated to follow that dictate.

Thus, the Court must determine at this time whether it may exercise jurisdiction over Plaintiff's claim, because if so, Plaintiff's claim is ripe for judicial review. Applying the rule laid down in Semper, the Court finds that it has jurisdiction over Plaintiff's claim because the procedures afforded to Plaintiff under the CSRA, which vest the Office of Special Counsel with plenary discretion over whether to refer a claim to the MSPB, do not afford Plaintiff meaningful review of his claim by a judicial officer. See Semper, 747 F.3d at 242.

The feature distinguishing the remedies afforded to Plaintiff under the CSRA from those available to the employees in Elgin is the fact that the viability of Plaintiff's claim is committed solely to the discretion of the OSC. Only if the OSC, whose role "has been compared to a prosecutor," elects to pursue a claim is the possibility of judicial review at the end of the line in the Federal Circuit unlocked. See Anderson v. United States, 8 F.3d 25, 1993 WL 394879, at *3 (9th Cir. Oct. 5, 1993) (unpublished table opinion).

The D.C. Circuit had the opportunity to engage in an extensive examination of whether this administrative procedure supplies a meaningful remedy for a federal employee's constitutional claim. See Spagnola v. Mathis, 809 F.2d 16, 22-28 (D.C. Cir. 1986), vacated in part en banc, 859 F.3d 223 (D.C. Cir. 1988) (per curiam). While the court was faced with the distinctly different question of whether to allow a federal employee to proceed with a Bivens

---

[20]    While the court did not expressly address the question of exhaustion, "it is most unlikely that the Court in Mitchum would detail with some precision the administrative remedies available to and forfeited by plaintiff Krumholz and then sanction his constitutional claim without alluding in any way to a duty to exhaust if the Court harbored any belief that such was required." New v. Brown, No. 97-CV-125, 1997 WL 666173, at *6 (E.D. Pa. Oct. 21, 1997).

claim for damages, and was subsequently vacated on this point by the full court under <u>Bush</u> and

its progeny, the court's observations are salient.[21] The court contrasted the "meaningful"

administrative remedies that are available when the CSRA entitles a federal employee to a

formal hearing before the MSPB and subsequent judicial review of an adverse ruling, with the

nature of the "essentially discretionary and unreviewable petition to the Office of Special

Counsel." <u>See id.</u> at 24 (quoting <u>Krodel v. Young</u>, 748 F.2d 701, 712 n.6 (D.C. Cir. 1984)). The

court also pointed to the structural infirmity of vesting an administrative body with the authority

to act as a gatekeeper for federal employees' constitutional claims, stating that "the OSC, an

administrative adjudicant itself, whose decision determines whether an employee's claim will

even get a hearing, lacks the independence necessary for such a conclusive determination

regarding constitutional claims." <u>See id.</u> at 23. While the court recognized that the Supreme

Court had not spoken to the issue of "whether Congress can deprive an individual of a judicial

forum in which to raise constitutional claims and substitute an unreviewable administrative

decision," the court expressed its doubts that such a conclusion would comport with the Court's

precedents. <u>See id.</u> at 27-28. The court ultimately concluded that petitioning the OSC for relief

"is not an adequate forum for constitutional claims." <u>See id.</u> at 28. The Ninth Circuit, also in the

context of <u>Bivens</u>, expressed similar concerns about the merits of this procedure. The court found

the procedure to fail to provide "'meaningful remedies' to one whose constitutional rights have

been violated" because the scheme affords "no enforceable right, and no judicial review, even if

[the employee] demonstrates a constitutional violation." <u>See Kotarski v. Cooper</u>, 799 F.2d 1342,

---

[21]     The court, en banc, explained that whether a statutory scheme precludes a <u>Bivens</u> action for damages
depends not upon the "'adequacy' of specific remedies" afforded by the statutory scheme but rather on "the
comprehensiveness of the statutory scheme." <u>See Spagnola v. Mathis</u>, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc)
(per curiam). Thus, while the court vacated the panel's ultimate conclusion that a <u>Bivens</u> action for damages was
available for federal employees complaining of constitutional violations, the court did not call in to question the
panel's view that the CSRA procedures fail to afford a meaningful opportunity for judicial review.

1348 (9th Cir. 1986), vacated, 487 U.S. 1212 (1988).[22] The court also observed that an employee

has no "right of participation in the process of investigation" or in the OSC's "decision whether

to take action." See id.

More recently, the Sixth Circuit cast the procedure in a more positive light. The court

characterized the OSC's exclusive discretion to pursue, or reject, a federal employee's

constitutional claim as "only a narrow limit upon judicial review," viewing the OSC's discretion

as limited to "weed[ing] out frivolous complaints and frivolous arguments." See Krafsur, 736

F.3d at 1038 (6th Cir. 2013) (citing 5 U.S.C. § 1214(b)(2)(B)). The court reasoned that the OSC

has "every incentive to help wronged employees" in light of its statutory mandate to "protect

employees . . . from prohibited personnel practices" and recognized that the Special Counsel is

insulated from removal without cause and "has independent authority to launch investigations, to

participate in Board proceedings and to file friend-of-the-court briefs." See id. (citing 5 U.S.C.

§§ 1211(b), 1212(a)-(d), (h)).

The good intentions of the OSC, however, would provide little comfort to a federal

employee whose constitutional claim was rejected pursuant to a process that is "essentially

discretionary and unreviewable." See Spagnola, 809 F.2d at 24 (quoting Krodel, 748 F.2d at 712

n.6)). While the Krafsur court is correct that the OSC is charged with reporting to the employee's

agency and the Office of Personnel Management any claim where the OSC determines there are

"reasonable grounds to believe that a prohibited personnel practice has occurred"—thus

declining to pursue, in theory, only what the Krafsur court described as "frivolous complaints

---

[22]    Like Spagnola, Kotarski was vacated to address the appropriate standard for determining whether a Bivens
action should be available for a federal employee seeking damages for a constitutional violation, not for any flaw in
the court's assessment of the deficiencies in the CSRA procedures. See Saul v. United States, 928 F.2d 829, 837 (9th
Cir. 1991) (citing Kotarski v. Cooper, 866 F.2d 311, 312 (9th Cir. 1989)) ("On remand, we shifted our inquiry from
evaluating whether the CSRA provided Kotarski with meaningful and adequate remedies to deciding if the CSRA's
omission of a damages remedy . . . was 'inadvertent.'"); supra note 21.

and frivolous arguments"—that same guidance does not apply to the discretion afforded to the OSC that is at the heart of this remedial scheme: the discretion to decide whether to refer the claim to the MSPB, which is the only route to further review in the Federal Circuit. With respect to that critical gatekeeping function, the CSRA provides only that, "[i]f, after a reasonable period of time, the agency does not act to correct the prohibited personnel practice, the Special Counsel may petition the Board for corrective action." See 5 U.S.C. § 1214(b)(2)(C). As Krafsur itself recognized, "if the Special Counsel concludes that the complaint lacks merit, or if [the Special Counsel] declines to refer the case to the Board, the employee is out of luck. A court may not review the Special Counsel's decisions unless the Counsel 'has declined to investigate a complaint at all.'" See 736 F.3d at 1034 (quoting Carson v. U.S. Office of Special Counsel, 633 F.3d 487, 493 (6th Cir. 2011)).

The court in Krafsur also focused on the fact that this remedial scheme applies to alleged constitutional violations that arise out of "relatively minor matters" of personnel actions rather than the more serious "adverse actions," which are entitled to a formal hearing before the MSPB and judicial review in the Federal Circuit." See 736 F.3d at 1038. This reasoning echoed the decision of the Fourth Circuit in Pinar v. Dole, which relied on the fact that the personnel actions in questions "are so minor in nature" to hold that the federal courts lack jurisdiction over constitutional claims for equitable relief brought by federal employees whose only recourse was to petition the OSC for relief. See 747 F.2d 899, 912 (4th Cir. 1984). Applying the due process balancing test prescribed by Mathews v. Eldridge,[23] the Fourth Circuit found this remedial scheme to be constitutionally adequate in light of the fact that the plaintiff had only been subjected to a two-day suspension and letter of reprimand, rather than a demotion or other, more serious personnel action. See id. at 907-08.

---

[23]        424 U.S. 319 (1976).

The immediate question, however, is not whether the remedial procedures afforded by the CSRA would provide Plaintiff with sufficient process to deprive him of a relatively minor property interest to which he is entitled, but whether Plaintiff may be denied any Article III forum to present his claim that his constitutional rights have been violated. While the answer to the former is guided by a "flexible" standard that takes into account the magnitude of the private interest at stake, see Eldridge, 424 U.S. at 901-03, the answer to the latter implicates the "'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim," see Webster v. Doe, 486 U.S. 592, 603 (1988) (quoting Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 681 n.12 (1986)). The focus of the Court's inquiry is whether the CSRA provides Plaintiff with the opportunity for "meaningful judicial review" of his constitutional claim, see Semper, 747 F.3d at 242, not whether the CSRA's procedures would be sufficiently rigorous to allow Plaintiff to be deprived of a minor property interest in a manner that is consistent with the Due Process Clause of the Fifth Amendment. See Spagnola, 809 F.2d at 26 (expressing the belief that the Pinar court's analysis "is significantly flawed" because the court "inappropriately applied the due process balancing test enunciated in Matthews v. Eldrige" to determine whether the CSRA scheme provides a constitutionally adequate forum to advance a constitutional claim). The Fourth Circuit itself subsequently expressed doubts that Pinar was properly decided in light of the Supreme Court's decision in Webster. See Bryant v. Cheney, 924 F.2d 525, 527-28 (4th Cir. 1991) (declining to "address the continuing vitality of Pinar" because of "the weight and difficulty of the issue and [the court]'s affirmance on other grounds" of the case under consideration).

The Court concludes that a remedial procedure that requires a Plaintiff to "surrender[] control of his claim to an office that has vast discretion not to prosecute his action" does not

afford Plaintiff "meaningful judicial review" of his claim under the standard set forth in <u>Semper</u>, which means that he "has the right to seek equitable and declaratory relief for [his] alleged constitutional violation in a 'federal question' action filed pursuant to § 1331." See <u>Semper</u>, 747 F.3d at 242; Note, <u>Bivens Doctrine in Flux: Statutory Preclusion of a Constitutional Cause of Action</u>, 101 Harv. L. Rev. 1251, 1264 (1988). The alternative is "to conclude that Congress had both the intention and the authority to deprive [these] employees of all meaningful protection for their constitutional rights." See <u>Kotarski</u>, 799 F.2d at 1349.

    The decisional rule laid down by <u>Semper</u> results in a deceptively tidy resolution of his issue. This Court's decision that the CSRA does not afford Plaintiff meaningful judicial review of his claim means, pursuant to the rule of <u>Semper</u>, that Plaintiff is entitled to pursue his claim here. Underneath that holding, however, appears to be a measure of incongruity with the interpretation given to the CSRA in <u>Elgin</u>. The rule of <u>Semper</u> appears to be the result of a synthesis of two interpretive canons—those of <u>Webster</u> and <u>Thunder Basin</u>—to form, in the context of the CSRA, the substantive rule of decision that "the CSRA precludes a federal employee from litigating constitutional claims for equitable and declaratory relief in a § 1331 action where the employee could pursue meaningful relief under a remedial plan that provides for meaningful review of his or her claims by judicial officers" but allows the federal courts to exercise jurisdiction if a federal employee "could not pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review." See <u>Semper</u>, 747 F.3d at 242. Pursuant to <u>Semper</u>, if a court concludes that a remedial scheme affords a meaningful level of judicial review, the court may not exercise jurisdiction over the claim. That result, in effect, is the product of applying the interpretive rule of <u>Thunder Basin</u> to conclude that it is "fairly discernible" that Congress intended, through the passage of the CSRA, to preclude

jurisdiction over the claim—the result the Supreme Court reached in <u>Elgin</u>. But if, as here, a court concludes that a remedial scheme does not afford a meaningful level of judicial review, <u>Semper</u> instructs that the court may exercise jurisdiction over that claim. The reason for that result appears to be that such a conclusion triggers the more rigorous interpretive rule of <u>Webster</u>—which admonishes the courts to not interpret a federal statute to strip the courts of jurisdiction over a constitutional claim unless the intent of Congress to do so is clear—and <u>Semper</u> has concluded that the CSRA does not speak clearly enough to do so, which means that jurisdiction may be exercised.

Depending upon the type of personnel action at issue, that implicit determination of congressional intent may be somewhat incongruous with the interpretation given to the CSRA in <u>Elgin</u>. There, the Court held that Congress intended for the CSRA to withhold jurisdiction over claims by federal employees arising out of the most serious of personnel actions: termination. If, as here, the constitutional claim for which no adequate judicial review exists arises out of a personnel action of a less serious kind, exercising jurisdiction over the claim imputes an intent to Congress to have the CSRA forbid federal employees who are subjected to the most serious personnel actions from seeking external judicial review, while affording the right to judicial review to federal employees subjected to lesser personnel actions. More than one court has identified a level of tension in such an interpretation of the CSRA, <u>see, e.g.</u>, <u>Krafsur</u>, 736 F.3d at 1039 (stating that this result would "overturn a central element of the Act's architecture"); <u>Pinar</u>, 747 F.2d at 911 (stating that this result would "fly in the face of Congress' clear intent to distinguish between disciplinary actions according to the severity of the punishment imposed and provide for varying degrees of review based on the gravity of the deprivation in question"), though not all courts agree. <u>See</u> <u>Spagnola</u>, 809 F.2d at 22 (reasoning that the characterization of

this result as an "anomaly" presumes that judicial relief is preferable to seeking relief through the CSRA's remedial scheme, which, if successful, may be, among other things, "speedier and therefore less costly" than resorting to the federal judiciary).

The alternative, which the rule of Semper does not appear to contemplate, is to conclude, through the interpretive lens of Webster, that Congress did clearly intend for the CSRA to preclude the federal courts from exercising jurisdiction over any constitutional claim for equitable relief, even if the CSRA's remedial procedures do not afford meaningful judicial review. In Krafsur, the Sixth Circuit expressed the belief that congressional intent to strip the federal courts of jurisdiction was clear enough to satisfy the rigorous standard of Webster, because the "Act leaves no doubt that an employee who believes that a prohibited personnel practice has occurred must take his complaint to the Special Counsel, not a district court, even if he contends that the practice violates the Constitution." See 736 F.3d at 1039. But once a federal statute is read to overcome the interpretive rule of Webster, the "'serious constitutional question' that . . . arise[s] if a federal statute [is] construed to deny any judicial forum for a colorable constitutional claim" must be confronted. See Webster, 486 U.S. at 603 (quoting Bowen, 476 U.S. at 681 n.12). See Kotarski, 799 F.2d at 1349 ("To reach such a result, we would have to conclude that Congress had both the intention and the authority to deprive [such] employees of all meaningful protection for their constitutional rights."). Krafsur did not address that constitutional quandary.

This Court need not either, because the rule of decision in Semper prescribes the outcome of this case. The CSRA procedures available to Plaintiff would not allow him to "pursue meaningful relief through a remedial plan that includes some measure of meaningful judicial review," which means that he "has the right to seek equitable and declaratory relief" in this

action. See Semper, 747 F.3d at 242. Nonetheless, the Court observes that this conclusion implicitly gives rise to an interpretation of the CSRA that may suggest a measure of incongruity in the remedies afforded to federal employees aggrieved by varying forms of personnel actions.

**B.      Plaintiff has failed to state a claim for a violation of his due process rights under the Fifth Amendment.**

Emerging from this jurisdictional analysis to address the merits of Plaintiff's claim, the Court concludes that Plaintiff's procedural due process rights were not violated when he was removed from his position as HOCALJ because he had no property interest in that position.

Plaintiff contends that he had "a significant property interest" in the "level of professional attainment of HOCALJ" and that before he may be deprived of that role "due process requires some kind of a hearing," which he did not receive because was informed via email that he had been removed. See Am. Compl. ¶¶ 75, 80-81. He seeks an order from this Court "direct[ing] these defendants and the federal administrative agency [to] provide Plaintiff [a] procedural due process opportunity to conduct a review of the facts and circumstances of his removal from the position of HOCALJ." See id. ¶ 82.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteen Amendment." Webster, 424 U.S. at 332. Before an individual may be deprived of a property interest, "some form of hearing" is generally required, though the precise procedural safeguards necessary to satisfy the Due Process Clause vary "as the particular situation demands." See id. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481(1972)) (citing Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974)). However, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the [Fifth Amendment's] protection of liberty and property," and "the range of interests protected by

42

procedural due process is not infinite." <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 569-70 (1972).

Identifying the existence of a protectable property interest requires reference to sources extrinsic to the Due Process Clause. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source . . . that secure certain benefits and that support claims of entitlement to those benefits." <u>Id.</u> More is required than a mere "unilateral expectation" that the property interest is secured, because no property interest can exist without "a legitimate claim of entitlement to it." <u>See</u> <u>id.</u> at 577. Thus, Plaintiff's "federal constitutional claim depends on [him] having had a property right in continued employment" as a HOCALJ. <u>See</u> <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985) (citing <u>Roth</u>, 408 U.S. at 576-78). When an employee asserts a property right in employment, the extent of that interest is "created and defined by the terms of his appointment." <u>See</u> <u>Roth</u> at 578.

> The decisional law is clear that an at-will employee does not have a legitimate entitlement to continued employment because [he] serves solely at the pleasure of [his] employer. Therefore, once a court determines that a public employee "held [his] position at the will and pleasure of the [governmental entity," such a finding 'necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns.

<u>Elmore v. Cleary</u>, 399 F.3d 279, 282 (3d Cir. 2005) (citation omitted) (quoting <u>Bishop v. Wood</u>, 426 U.S. 341, 346 n.8 (1976)) (citing <u>Chabal v. Reagan</u>, 841 F.2d 1216, 1223 (3d Cir. 1988)); <u>Thomas v. Town of Hammonton</u>, 351 F.3d 108, 113 (3d Cir. 2003) (citing <u>Bishop</u>, 426 U.S. at 346 n.8).

A HOCALJ is an ALJ who acts in a managerial capacity for a regional office of the Social Security Administration's Office of Disability and Review. <u>Bridges</u>, 2014 WL 1281158, at *6.

> The HOCALJ has administrative and managerial responsibility for all personnel in the hearing office (HO) and provides overall guidance and direction regarding adherence to time and attendance procedures; staffing, space, equipment and expert witness needs; rotational assignment of cases and review of work products; application of performance standards and appraisals; and approval of travel vouchers, itineraries and expenditures.
>
> The HOCALJ . . . ensures compliance with the principles of equal employment opportunity and HOA's Affirmative Employment Plan, and conducts labor management functions consistent with collective bargaining agreements. The HOCALJ also ensures the timely and accurate response to public and congressional inquiries . . . and conducts periodic training.

Id. Plaintiff was named the HOCALJ of the Harrisburg, Pennsylvania regional office in June 2004 and served in that capacity until his removal on June 4, 2010. Id. at *5.

Plaintiff has a property interest in his position as a Social Security Administration ALJ, because an ALJ may only be subjected to certain serious adverse employment actions, including removal, "for good cause established and determined by the Merit Systems Protection Board." See 5 U.S.C. § 7521; Brennan v. Dep't of Health & Human Servs., 787 F.2d 1559, 1561 (Fed. Cir. 1986). When an employee cannot be dismissed except for cause, "he clearly ha[s] a property interest protected by due process." See Johnson v. United States, 628 F.2d 187, 194 (D.C. Cir. 1980) (citing Roth, 408 U.S. at 576-78).[24] The position of HOCALJ, however, is not secured by that guarantee. See Butler, 331 F.3d at 1373-74.

Instead, a HOCALJ may be removed from that position, and returned to the role of an ordinary ALJ, "at the discretion of the Chief Administrative Law Judge with the concurrence of the Deputy Commissioner."[25] See Am. Compl. Ex., at 80a. It is equally clear, therefore, that

---

[24] Johnson was construing 5 U.S.C. § 7512, the language of which is "nearly identical to that of section 7521." See Butler, 331 F.3d at 1372 ("[S]ection 7521 must be construed consistently with its sister provision, section 7512.").

[25] The fact that a HOCALJ is afforded the procedural protection of requiring the concurrence of the Deputy Commissioner "does not transfer his or her interest in continued employment into a property interest protected by the Due Process Clause," because "'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty." See Thomas, 351 F.3d at 113 (internal quotation marks omitted) (quoting Loudermill, 470 U.S. at 541).

Plaintiff had no property interest in his role as HOCALJ. "Once a determination has been reached . . . that an employee 'held [his] position at the will and pleasure' of his employer, "that finding 'necessarily establishes that [the employee] had no property interest.'" Thomas, 351 F.3d at 113 (quoting Bishop v. Wood, 426 U.S. at 346 n.8)). While Plaintiff would be entitled to certain procedural guarantees if he was removed from his position as ALJ, his loss of the title and duties of HOCALJ and restoration to the role of ALJ "was not an action against an employee for which cause was required" and does not entitle Plaintiff to the protections of the Due Process Clause. See Pinar, 747 F.2d at 913-14 (holding that the elevation of a federal employee, who could not be removed without cause, to a temporary promotion that could be "terminated at any time at the discretion of the agency" did not confer a property interest protected by the Due Process Clause in the elevated position).

Plaintiff had no property interest in his position as HOCALJ of the Harrisburg, Pennsylvania regional office and therefore suffered no deprivation of his due process rights when that position was lost. Accordingly, Count II of Plaintiff's Amended Complaint, the sole claim remaining, is dismissed with prejudice.

**V.     Plaintiff's motion for leave to amend his Amended Complaint is denied.**

Plaintiff seeks leave to amend his Amended Complaint to add three new claims, which "arise from a revised position description . . . adopted by the defendant federal agency on December 23, 2013." See Pl.'s Mot. Leave File Third Am. Compl. ¶ 2, ECF No. 68. These claims arise out of revisions the Social Security Administration allegedly made to the position description for Administration ALJs, which were promulgated on December 23, 2013. See id. Plaintiff points to three specific revisions as grounds for his additional claims. First, Plaintiff contends that while the prior position description contained references to the Administrative

Procedure Act ("APA"), the revised position description "removes <u>all</u> references to the Administrative Procedures Act [sic] in its text." <u>See</u> Pl.'s Mot. Ex., ¶ 109. Second, Plaintiff contends that the position description altered the procedural safeguards that exist for ALJs serving in the position of HOCALJ for a regional office. He alleges that the revised position description permits an ALJ to be removed at the discretion of a Regional Chief Administrative Law Judge, rather than at the discretion of the Chief Administrative Law Judge with the concurrence of the Deputy Commissioner. <u>See</u> <u>id.</u> ¶ 110. Third, Plaintiff contends that the revised position description omits a discussion of the procedural safeguards contained in the APA and the Social Security Act that protect the decisional independence of Administration ALJs. <u>See</u> <u>id.</u> ¶ 111.

      Plaintiff contends that these revisions to the ALJ position description supply him with three additional claims for relief. First, Plaintiff seeks a declaratory judgment that the revised position description is "unconstitutional on its face" because the position description omits references to the APA as well as references to the procedural safeguards that protect the decisional independence of ALJs. <u>See</u> <u>id.</u> ¶ 114-15. Second, Plaintiff seeks a declaratory judgment that the position description "is unconstitutional as applied" to the extent that the position description "purports to remove the applicability of the [APA] to the relationship between the agency and the administrative law judges employed by the agency" and "modifies the independence of the administrative law judges with the agency." <u>See</u> <u>id.</u> ¶ 116-19. Finally, Plaintiff seeks a declaratory judgment that the position description is "is unconstitutional as applied" to Plaintiff because the position description was used to retaliate against Plaintiff for engaging in "protected activity" by "authoriz[ing] a 'focused review' of Plaintiff's adjudicated decisions." <u>See</u> <u>id.</u> ¶¶ 118-21.

Plaintiff filed his motion pursuant to Federal Rule of Civil Procedure 15(a)(2), but Rule 15(a)(2) is not applicable to this request. Plaintiff seeks to assert three new claims, each of which allegedly arose out of revisions to the ALJ position description that were promulgated on December 23, 2013. Plaintiff's original complaint, however, was filed on April 30, 2012, and subsequently amended on March 15, 2013. When a party seeks to assert claims based on a "transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Rule 15(d) governs that request, which provides that "the court may, on just terms, permit a party to serve" such a supplemental pleading. See Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1188-89 (3d Cir. 1979) ("[A] supplemental pleading differs from an amendment, which covers the matters that occurred before the filing of the original pleading but were overlooked at the time."). "Leave to file a supplemental complaint should be freely permitted in the absence of undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility, and when the supplemental facts are connected to the original pleading." CMR D.N. Corp. v. City of Phila., No. 07-1045, 2011 WL 857294, at *4 (E.D. Pa. Mar. 11, 2011).

Plaintiff's supplemental claims, and the facts supporting those claims, bear little, if any, connection to Plaintiff's original pleading. Plaintiff's Amended Complaint asserts various claims arising out of his allegations that "Administrative Law Judges Janet Landesburg, and Reana Sweeney, . . . acting in concert with Jasper Bede, conspired to have Jasper Bede take action to remove Plaintiff from his position as HOCALJ of the Harrisburg, Pennsylvania office . . . . These actions . . . were motivated by racial animus, jealous and malice against Plaintiff, as a Negro male." See Am. Comp. ¶ 44. As the Court has examined at length, Plaintiff was removed from his position as HOCALJ on June 4, 2010. Plaintiff's supplemental complaint contends that

changes that the Social Security Administration made on December 23, 2013, to the position description that applies to all Administration ALJ positions throughout the country is "constitutionally infirm." Notably absent from this supplemental pleading are any references to Judges Landesburg, Sweeney, and Bede, or indeed to any particular actors at the Social Security Administration who took part in the decision to revise the ALJ position description. Absent as well are any references to racially discriminatory animus directed toward Plaintiff, with the exception of Plaintiff's conclusory allegation that the revised position description was used to retaliate against Plaintiff for "protected activity"—activity about which Plaintiff does not elaborate—in violation of his rights under Title VII. See See Pl.'s Mot. Ex., ¶ 120. Thus, the connection of this pleading to Plaintiff's Amended Complaint is tenuous, at best. In addition, as Defendants point out, this is also not the first time Plaintiff has sought leave to amend to file a supplemental pleading concerning these revisions to the ALJ position description. Three months prior to filing the present motion, Plaintiff sought to assert four additional claims based on these revisions, seeking, among other forms of relief, a declaratory judgment that these revisions violated Plaintiff's constitutional rights. Pl.'s Second Mot. Leave File Supp. Pleading, Jan. 22, 2014, ECF No. 41. The Court denied Plaintiff leave to file that supplemental pleading. See Order, Feb. 24, 2014. Accordingly, pursuant to Rule 15(d), the Court declines to permit Plaintiff leave to file this supplemental pleading.

Even if the Court were willing to exercise its discretion to allow Plaintiff leave to file this supplemental pleading, doing so would be futile, because the Court's review of Plaintiff's proposed pleading reveals that it fails to state a claim upon which relief can be granted. With respect to Plaintiff's first two claims that the ALJ position description itself is "unconstitutional" because the position description omits certain references to provisions of the APA, these claims

represent little more than Plaintiff's speculation that, because the Social Security Administration

revised the position description to omit references to certain APA provisions, the Social Security

Administration will violate those provisions. These allegations would only ripen into actionable

claims if Plaintiff's speculation becomes reality, and the Social Security Administration acts

outside of the APA and causes Plaintiff injury. Declaratory judgment remedies "are

discretionary, and courts traditionally have been reluctant to apply them . . . unless these arise in

the context of a controversy 'ripe' for judicial resolution." See Reno v. Catholic Soc. Servs., Inc.,

509 U.S. 43, 57 (1993).

       With respect to Plaintiff's third claim, which seeks a declaratory judgment that the

revised position description has been unconstitutionally applied to him in violation of his equal

protection rights secured to him by the Fifth Amendment and that the position description

violates his rights under Title VII, Plaintiff has not set forth sufficient facts to support either

theory. Plaintiff states only that the position description "has been used to authorize a 'focused

review' of Plaintiff's adjudicated decisions and has not been so used to provide a review of the

decisions of any other judge in Region #3." See Pl.'s Mot. Ex., ¶ 120. Plaintiff concludes from

this allegation that the position description violates his "rights to Equal Protection under the laws

of the Constitution of the United States" and violates "the 'anti-retaliation' provisions of Title

VII." See id. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v.

Allain, 478 U.S. 265, 286 (1986)). "[A] complaint must allege facts suggestive of [the

proscribed] conduct," and "only a complaint that states a plausible claim for relief survives a

motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This Plaintiff's proposed

supplemental pleading does not do. Plaintiff does not plead any facts to suggest any connection between the ALJ position description and the "focused review" of his adjudicated decisions that allegedly occurred, nor does Plaintiff supply any factual allegations to suggest that the authorization of a "focused review"—a term that Plaintiff's supplemental pleading does not discuss or explain—constitutes a violation of his equal protection rights. Nor does Plaintiff plead sufficient facts to support a claim that of retaliation in violation of Title VII. "To state a prima facie case of retaliation under Title VII, plaintiff must plead sufficient facts to support a plausible inference that (1) he engaged in activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action." Bridges, 2014 WL 1281158, at *17 (citing Wadhwa v. Sec'y, Dep't of Veterans Affairs, 505 F. App'x 209, 213 (3d Cir. 2012)). Plaintiff's supplemental pleading states that he was retaliated against for "engaging in protected activity," without elaboration, and does not contain any allegations to link that undescribed protected activity to the "focused review," which is presumably the adverse action of which Plaintiff complains. See Pl.'s Mot. Ex., ¶ 119-20. Plaintiff's supplemental pleading also contains no allegation that he exhausted his administrative remedies before asserting this Title VII claim. See Bridges, 2014 WL 1281158, at *15 ("[B]efore bringing a Title VII suit in federal court, a federal employee must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." (quoting Winder v. Postmaster Gen. of U.S., 528 F. App'x 253, 255 (3d Cir. 2013)).

Therefore, pursuant to Rule 15(d), the Court denies Plaintiff's motion for leave to file a supplemental pleading.

**VI.     Conclusion**

For the foregoing reasons, the Court denies Plaintiff's motion for reconsideration of this Court's March 28, 2014 Order, grants Defendants' motion to dismiss Count II, the sole claim remaining in Plaintiff's Amended Complaint, and denies Plaintiff's motion for leave to file a supplemental pleading. An appropriate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.,
United States District Judge